UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SANCHEZ-RIVERA,<br>Reg. No. 073-830-803<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Defendant. | Case No. 22-cv-1254-BAS-BGS<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS [ECF No. 2]; AND**<br><br>**(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

　　　Juan Sanchez-Rivera ("Plaintiff"), a federal immigration detainee at the Imperial Regional Detention Facility ("IRDF") in Calexico, California, and proceeding *pro se*, has filed a civil action ("Compl."), alleging claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 and § 2674. (Compl., ECF No. 1.) In addition, Plaintiff seeks to proceed *in forma pauperis* ("IFP"). (IFP Mot., ECF No. 2.) For the reasons set forth

below, the Court **GRANTS** the IFP Motion and finds Plaintiff has alleged an FTCA claim sufficient to survive pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

I.   **IFP Motion**

A party who institutes a civil action, suit, or proceeding in a district court of the United States, except for an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

Indigency is the benchmark for whether a plaintiff qualifies for IFP status. *See Fernandez v. Madden*, No. 22-cv-0446-BAS-WVG, 2022 WL 3109941, at *1 (S.D. Cal. Aug. 4, 2022). The determination of indigency falls within the district court's sound discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (holding that "[s]ection 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement on indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993). It is well-settled that a party need not be completely destitute to proceed IFP. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948). To qualify for IFP status, "an affidavit [of poverty] is sufficient which states that one cannot because of his poverty pay or give security for costs . . . and still be able to provide himself and the dependents with the necessities of life." *Id.* at 339. However, "the same even-handed care must be employed to assure that federal funds are not squandered to underwrite, at public expense . . . the remonstrances of a suitor who is financially able, in whole or in part, to pull his own oar." *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

---

[1] In addition to the $350 statutory fee, civil litigants must pay an administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)). The additional $52 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

"Unlike other indigent litigants, prisoners proceeding IFP must pay the full amount of filing fees in civil actions and appeals pursuant to the [Prison Litigation Reform Act ("PLRA")]." *Agyeman v. Immigration & Naturalization Servs.*, 296 F.3d 871, 886 (9th Cir. 2002). As defined by the PLRA, a "prisoner" is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). However, a person detained and subject to removal or deportation—like Plaintiff here—is not a "prisoner" under the PLRA. *See Agyeman*, 296 F.3d at 886; *Ojo v. Immigration & Naturalization Servs.*, 106 F.3d 680, 682–83 (5th Cir. 1997) (holding that a detainee of the Immigration and Naturalization Service ("INS") is not a prisoner for the purpose of the PLRA filing fee provision); *cf. Andrews v. King*, 398 F.3d 1113, 1122 (9th Cir 2005) ("civil detainee" is not a "prisoner" within the meaning of the PLRA).

Here, Plaintiff alleges that he is "'civilly' detained under the authority of Immigration & Customs Enforcement ("ICE")" at IRDF, where he has been "incarcerated the past three years pending removal proceedings." (Compl. ¶ 1.) Accordingly, Plaintiff is not a "prisoner" under the PLRA, and the filing fee provisions of 28 U.S.C. § 1915(b) are inapplicable to this case. *See Agyeman,* 296 F.3d at 886. Therefore, the Court need only review Plaintiff's affidavit of assets, just as it would for any other non-prisoner litigant seeking IFP status.

Plaintiff attests he is entirely destitute. He avers that he is unemployed, does not receive money from any source, does not have a savings or checking account, does not own any assets of value, such as real estate, an automobile, or other similar items, and has been in ICE custody at IRDF for the past three years. (IFP Mot. at 1–3; *see* Compl. ¶ 1.) Accordingly, the Court concludes Plaintiff has established he is unable to pay the fees or post the securities required to maintain a civil action and, thus, **GRANTS** the IFP Motion. *See* S.D. Cal. Civ. L.R. 3.2(d).

## II. SCREENING PURSUANT TO 28 U.S.C. § 1915(e)(2)(B)

### A. Standard of Review

A complaint filed by *any* person proceeding IFP is subject to *sua sponte* dismissal if it is "frivolous, malicious, fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim."). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under 28 U.S.C. [§ 1915(e)(2)(B)] is the same as the Federal Rule of Civil Procedure [("Rule")] 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

While the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

### B. Plaintiff's Allegations[2]

On April 1, 2020, Plaintiff, along with other detainees at IRDF, began a hunger strike in protest of the facility's "lack of precautionary measures relative to the COVID-19 pandemic." (Compl. ¶ 32.) Later that morning, staff ordered an emergency lockdown. (*See id.*) While Plaintiff was waiting for the lockdown to be lifted, he was physically removed from his cell, had mechanical restraints applied to him, and was placed in the facility's "solitary confinement unit under fabricated charges of threats against staff and inciting others to riot." (*Id.* ¶ 33.) Plaintiff was later told these charges were based upon the "accusations of two confidential sources." (*Id.* ¶ 35.) IRDF personnel issued an Investigative Report and Incident Report detailing the bases of these charges. (*See id.* ¶ 41; *see also* Memorandum of Facility Administrator Sixto Marrero ("Marrero Memo."), Ex. E to Compl., ECF No. 1-6 (indicating "Sgt. Samantha Nelson" had prepared an Investigative Report" laying out charges proposed against Plaintiff).)

On April 3, 2020, a hearing was held with respect to the charges levied against Plaintiff. (*See* Compl. ¶ 45.) Following that hearing, and based upon its review of the Incident Report and Investigative Report, IRDF's Institution Disciplinary Panel ("IDP") concluded in a written report that "[n]o prohibited act was committed" and that "'[e]vidence [was] not enough to support [the] charges' against Plaintiff." (Compl. ¶ 45 (citing Hearing Report, Ex. D to Compl., ECF No. 1-5).) Nevertheless, citing the

---

[2] These allegations all are taken from the Complaint. (ECF No. 1.) For this § 1915A screening, the Court accepts as true all of Plaintiffs' factual allegations. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Investigative Report, Marrero overruled the IDP's determination and imposed a sanction of "30 days of disciplinary detention" on April 6, 2020. (*See* Marrero Memo.; Compl. ¶ 46.)

Plaintiff filed a grievance on April 15, 2020, challenging the sufficiency of the evidence upon which the charges against him were premised. (*See* Compl. ¶ 47.) However, his grievance was denied; Plaintiff alleges that in the document denying his grievance, the assistant facility administrator "added untruthful uncorroborated details" not present in the record. (*See id.*) Plaintiff attempted to file another grievance directly with ICE, but ICE refused to "investigate, review [or] adjudicate Plaintiff's grievance." (*Id.* ¶¶ 49–52.)

Plaintiff alleges that the actions taken by IRDF officials against him constitute "intentional tortious actions of assault, false imprisonment, and intentional infliction of emotional pain." (Compl. ¶ 53.) He alleges that he suffered "injuries, including physical pain, emotional distress, physiological trauma, and mental deterioration" as a result of his allegedly unwarranted segregated confinement. (*Id.* ¶ 54.) He brings this action against the United States only, seeking compensatory damages in the amount of $3,000,000. (*See id.*)

### C. Analysis

The FTCA waives the United States' sovereign immunity for claims arising out of common law torts committed by federal employees. *See United States v. Olson*, 546 U.S. 43, 44 (2005). It "authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Id.* (quoting 28 U.S.C. § 1346(b)(1)).

The FTCA explicitly prohibits claims "arising out of" an intentional tort, including claims of false imprisonment and assault *See* 28 U.S.C. § 2680(h). However, that limitation does not apply where, as here, the alleged perpetrator appears to be "a federal investigative or law enforcement officer." *Black v. United States*, No. C13-541RBL, 2013

WL 5214189, at *2 (W.D. Wash. Sept. 17, 2013).³ *See also Millbrook v. United States*, 568 U.S. 50, 57 (2013) ("The waiver effected by the law enforcement proviso extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest.").

Plaintiff's allegations of wrongdoing in the Complaint sound principally in false imprisonment. (*See* Compl. ¶¶ 45–46 (alleging Plaintiff was disciplined with 30-days in segregated confinement despite being acquitted of the charges for which he was disciplined).) Under California law, "[t]he tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Castro v. City of Hanford*, 546 F. Supp. 2d 822, n.2 (E.D. Cal. Mar. 3, 2008) (citing *City of Newport Beach v. Sasse*, 9 Cal. App. 3d 803, 810 (1970)). Here, Plaintiff alleges that he was placed in segregated disciplinary confinement for inciting a riot and threatening an IRDF staff member with bodily harm, even though he was found innocent of those charges following a hearing and review of the relevant reports by the IDP. (Compl. ¶¶ 45–46.) He alleges that he served a 30-day sentence, during which he was "housed in a cell by himself where he spent twenty-three hours a day and where shackles and restraints w[ere] used on him every time he departed his cell," and that he

---

³ Plaintiff avers that the perpetrators of the intentional torts forming the premise of this action include Marrero, IRDF's facility administrator, and facility security staff. (*See* Compl. ¶ 33, 46.) Although the issue is not a settled one, prison officials and staff "appear to qualify as law enforcement officers within the meaning of the FTCA." James E. Pfander, *Dicey's Nightmare: An Essay on the Rule of Law*, 107 Cal. L. R. 737, 778 n.213 (June 2019) (citing *Millbrook*, 568 U.S. at 55 n.3); *see also Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) (treating prison guards as law enforcement officers for purposes of the intentional torts proviso).

That Plaintiff alleges IRDF is operated under contract with ICE by a "private corporation," Management and Training Corporation ("MTC"), and that the perpetrators of the intentional torts were "private facility operators" (*see, e.g.*, Compl. ¶ 1) does not appear to render FTCA's law enforcement proviso inapplicable here. *See Agyeman*, 390 F.3d at 1103–04 (opining that plaintiff, who was allegedly assaulted and unlawfully restrained while held at an ICE detention facility operated by a private prisoner, "could have brought a suit against the United States under the Federal Tort Claims Act," as opposed to a *Bivens* suit against the private corporation itself); *see also Manriquez v. Huchins*, No. 1:09-cv-00456-OWW-SMS PC, 2011 WL 3502482, at *2 (E.D. Cal. Aug. 5, 2011).

suffered physical and emotional harm as a result. (*Id.* ¶¶ 3, 54.) These allegations are sufficient to form the basis of a false imprisonment claim robust enough to satisfy the "low threshold" for *sua sponte* screening, as required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Millbrook*, 569 U.S. at 57; *Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678.

\* \* \* \*

The Court observes that in July of 2020 Plaintiff brought an action in this district based on virtually the same facts as the instant action. *See Juan Sanchez-Rivera v. Jorge Bribiesca, et al.*, 3:20-cv-1264-MMA-MSB ("*Sanchez-Rivera I*").[4] Crucially, *Sanchez-Rivera I* was brought against ICE officials and MTC employees pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens*"), as opposed to pursuant to the FTCA. United States District Judge Michael M. Anello dismissed *Sanchez-Rivera I*, *sua sponte*, for failing to allege facts adequate to invoke the requirements of a *Bivens* action. *See Sanchez-Rivera I*, ECF Nos. 5, 7.[5] The reasons for dismissal of Plaintiff's *Bivens* claims in *Sanchez-Rivera I* do not bear upon whether Plaintiff has adequately alleged an FTCA claim. Therefore, the Court will not dismiss this action as duplicative.

### III. Conclusion

Based on the foregoing, the Court:

1. **GRANTS** Plaintiff's IFP Motion pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

2. **DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Complaint (ECF No. 1) upon Defendant the UNITED STATES OF AMERICA and forward it to Plaintiff. Because Plaintiff is suing the United States, he must serve Defendant in accordance with Rule 4(i). *See* Fed. R. Civ. P. 4(i)(1). The Clerk is further

---

[4] A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Bias v. Moynihan,* 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

[5] Plaintiff subsequently filed an appeal to the United States Court of Appeals for the Ninth Circuit, but this appeal was dismissed for failing to prosecute. *See Sanchez-Rivera I*, ECF Nos. 9, 14.

directed to include in Plaintiff's IFP package two separate copies of this Order, Plaintiff's Complaint (ECF No. 1), the summons, and two blank USM Form 285s for Plaintiff's use in serving the United States via the United States Attorney for the Southern District of California and the Attorney General of the United States in Washington, D.C. *See* Fed. R. Civ. P. 4(i)(1)(A)(i). Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include addresses where the Defendant may be served*, see S.D. Cal. Civ. L.R. 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package, **by no later than September 30, 2022**.

3. **ORDERS** the U.S. Marshal or deputy marshal to serve a copy of the Complaint and summons upon Defendant the UNITED STATES OF AMERICA as directed by Plaintiff on the USM Form 285s provided to him **upon receipt**, **and in no case later than November 30, 2022**. The U.S. Marshal or deputy marshal must immediately thereafter file proof of that service, or proof of his or her inability to execute service, with the Clerk of the Court. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

4. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendant the UNITED STATES OF AMERICA, or, if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court a Certificate of Service stating the manner in which a true and correct copy of that document was served on Defendant or its counsel, and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed

//
//
//
//

with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED.**

DATED: September 6, 2022

Hon. Cynthia Bashant
United States District Judge