UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN SANCHEZ-RIVERA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　　　　　Defendant. | Case No. 22-cv-1254-BAS-BGS<br><br>**ORDER GRANTING MOTION TO AMEND COMPLAINT (ECF No. 7)** |

Before the Court is Plaintiff Juan Sanchez-Rivera ("Plaintiff")'s unopposed motion for leave to file an amended pleading that adds Defendant Management & Training Corporation ("MTC") to this tort action. (Mot., ECF No. 7; Proposed Am. Compl. ("Am. Compl."), ECF No. 7-1 ; Exhibits, ECF No. 7-2.) For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion.

I.   **BACKGROUND**[1]

　　A.   **Initial Complaint and Screening Order**

Plaintiff is being detained by Immigration & Customs Enforcement ("ICE") at the Imperial Regional Detention Facility ("IRDF") in Calexico, California while he awaits

---

[1] All the facts set forth in this section are taken from Plaintiff's initial Complaint or his proposed Amended Complaint. (ECF Nos. 1, 7-1.) The Court presumes to be true the non-conclusory allegations contained therein. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

- 1 -

removal proceedings. (Compl. ¶ 1, ECF No. 1.) ICE contracted MTC, a private corporation, to operate IRDF. (*Id.*) IRDF staff is employed by MTC, not the Government. (*Id.*) MTC personnel effectively perform the functions of correctional officers at IRDF; they do so under "the direct supervision of their federal contract officer representative." (*Id.*)

In his initial Complaint, Plaintiff claims that he and a group of other detainees commenced a hunger strike on April 1, 2020 to protest IRDF's "lack of precautionary measures relat[ed] to the COVID-19 pandemic." (Compl. ¶ 32.) In response, IRDF staff ordered an emergency lockdown. (*Id.*) While Plaintiff was waiting for the lockdown to be lifted, "MTC administrative operators and security staff, under the direct supervision of [an ICE officer]," physically removed Plaintiff from his cell, mechanically restrained him, and placed him in IRDF's "solitary confinement unit under [allegedly] fabricated charges of threats against staff and inciting others to riot." (*Id.* ¶ 33.) Plaintiff was later told these charges were based upon "accusations of two confidential sources." (*Id.* ¶ 35.)

On April 2, 2020, Plaintiff received an incident report detailing the bases of the charges against him. (Compl. ¶ 35; Information Report, Ex. B to Compl., ECF No. 1-3.) The Incident Report, which is printed on MTC letterhead, was authored by IRDF Gang Intelligence Officer Jose Builteman. (Compl. ¶¶ 34–35.) It states the group of detainees who organized the hunger strike had pressured others to partake and had planned to assault IRDF staff. (*Id.* ¶ 35.) Plaintiff alleges the Incident Report "only vaguely identified [his] role in the allegations." (*Id.*) Nevertheless, Plaintiff was charged with, *inter alia*, "Inciting others to riot" under IRDF's rules and procedures. (*Id.*)

IRDF's Institution Disciplinary Panel ("IDP") held a hearing on April 3, 2020, at which it adjudicated the charges levied against Plaintiff. (*See* Compl. ¶ 45.) The IDP concluded in a written report that the proffered "'[e]vidence [was] not enough to support [the] charges' against Plaintiff" and, therefore, it determined "[n]o prohibited act was committed" to warrant sanctioning Plaintiff. (*Id.* (citing Hearing Report, Ex. D to Compl., ECF No. 1-5).) But on April 7, 2020, IRDF Facility Administrator Sixto Marrero overruled

the IDP's conclusions, found Plaintiff guilty of "Inciting others to riot," and imposed a sanction of "30 days of disciplinary detention." (Marrero Memorandum, Ex. E to Compl., ECF No. 1-6; Compl. ¶ 46.)

Plaintiff filed a grievance pursuant to MTC and ICE policy on April 15, 2020, challenging Marrero's determination. (*See* Compl. ¶ 47; Grievance, Ex. F to Compl., ECF No. 1-7; MTC Detainee Handbook, Ex. G to Compl., ECF No. 1-8.) However, his grievance was denied by IRDF Assistant Facility Administrator Edward Ruiz. (Compl. ¶ 47.) Plaintiff then sought to petition ICE directly, but ICE refused to investigate, review, or adjudicate Plaintiff's grievance. (*Id.* ¶ 52.)

Approximately two years later, in August 2022, Plaintiff commenced the instant action against the United States pursuant to the Federal Tort Claims Act ("FTCA"). (*See generally* Compl.) He alleged that the actions taken by IRDF officials against him constitute "intentional tortious actions of assault, false imprisonment, and intentional infliction of emotional pain," and that, as a result of those actions, he suffered "injuries, including physical pain, emotional distress, physiological trauma, and mental deterioration." (*Id.* ¶¶ 52, 54.) Plaintiff also contemporaneously moved to proceed *in forma pauperis* ("IFP"). (IFP App., ECF No. 2.)

Upon review of his IFP Application and Complaint, this Court granted Plaintiff IFP status and found Plaintiff had adequately alleged a claim under the FTCA to surpass the low threshold applied at the pre-answer screening stage under 28 U.S.C. § 1915(e)(2)(B). Specifically, the Court found that Plaintiff's allegations of unwarranted disciplinary confinement and the attendant physical and emotional harm he suffered as a result were sufficient to form the basis of a false imprisonment claim. Furthermore, the Court determined Plaintiff had adequately shown the FTCA waived the United States' sovereign immunity from suit. (Order at 6, ECF No. 3.)[2]

---

[2] Notably, the Court opined that, despite the facts that IRDF is operated by MTC, a private corporation, and the alleged perpetrators were MTC employees as opposed to federal ones, Plaintiff's claims against the United States still fit within the ambit of the FTCA's waiver of sovereign immunity

Accordingly, the Court directed the U.S. Marshal to effect service of the Complaint upon the United States pursuant to 28 U.S.C. § 1915(d) and the United States to file a responsive pleading. (Order at 8; *see also* Answer, ECF No. 16.) The United States initially moved to dismiss Plaintiff's action as time-barred (*see* ECF No. 11), but later withdrew that motion in light of arguments raised in Plaintiff's opposition (ECF Nos. 12–13). The United States then filed an Answer to the Complaint. (ECF No. 16.)

### B. Motion for Leave to Amend

Plaintiff seeks to amend his Complaint by adding MTC as a Defendant and asserting "state tort claims" against it in this action. He alleges this Court must exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a). (Mot.; Am. Compl. at 6.) Although truncated by comparison, the proposed Amended Complaint's substantive allegations are practically identical to those set forth in the initial Complaint, and the same key documents are appended as exhibits to the new pleading (*see* ECF No. 7-1).

## II. LEGAL STANDARD

### A. Rule 15(a)

Rule 15(a) governs a plaintiff's right to add defendants to his or her case.[3] Under that provision, a plaintiff may amend his complaint once as a matter of course within specified time limits. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its

---

because ICE had contracted and authorized MTC to operate IRDF. (*Id.* at 7 n.3 (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103–04 (9th Cir. 2004) (opining plaintiff "could have brought a suit against the United States under the Federal Tort Claims Act" for the conduct of a private corporation and its employees with whom Immigration and Naturalization Services contracted to run its civil detention center).

[3] While there appears to be some disagreement among courts about whether Rule 15, Rule 21, or both govern requests amend a pleading to add defendants, this Court has consistently found Rule 15 to be controlling. *See, e.g.*, *Davis v. FBI*, No. 17-cv-0701-BAS-AGS, 2017 WL 4310762, at *2 (S.D. Cal. Sept. 27, 2017) (applying Rule 15(a) to request to add defendants); *Estate of Doe ex rel. Jackson v. Cty. of San Diego*, No. 20-cv-0457-BAS-DEB, 2021 WL 1378813, at *2 (S.D. Cal. Apr. 12, 2021) (same); *de la Rosa v. San Diego Gas & Elec. Co.*, No. 18-cv-1389-BAS-JLB, 2019 WL 56996686, at *1 (S.D. Cal. Nov. 4, 2019) (same). But regardless of which Rule applies, there is "little practical difference between Rule[s] 15 and 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion." *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012).

pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, Plaintiff invokes Rule 15(a)(2) and requests leave of court to file his proposed Amended Complaint. *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1007 (9th Cir. 2015) (interpreting Rule 15(a) as being "organized substantively, not chronologically," and thereby authorizing a plaintiff to seek amendment pursuant to Rule 15(a)(2) even if Rule 15(a)(1) also applies to the amendment).

While courts exercise broad discretion in deciding whether to allow leave to amend, they have generally adopted a liberal policy favoring amendment. *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citing *McCartin v. Norton*, 674 F.2d 1317, 1321 (9th Cir. 1982)). Accordingly, leave is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment[.]" *Forman v. Davis*, 371 U.S. 178, 182 (1962). The non-moving party—here, the United States—bears the burden of showing why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989).

**B.     Pre-Answer Screening under 28 U.S.C. § 1915(e)(2)(B)**

In addition to their discretion to allow amendment under Rule 15(a), federal courts have a statutorily imposed obligation under 28 U.S.C. § 1915(e)(2)(B) to review an IFP complaint to determine whether it is "frivolous, malicious, fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (holding "the provisions of [Section 1915(e)] are not limited to prisoners"). "[S]ection 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 1999) (en banc).

This Court's own research does not disclose any Ninth Circuit precedent addressing whether Section 1915(e)'s statutory regime mandates district courts to undertake a pre-answer screen of an *amended* IFP complaint where, as here, there already is a Section 1915(e)(2)(B)-compliant pleading on file.  Considering the purpose of Section 1915(e), and interpreting the text of that statute, this Court concludes it remains obligated to conduct a pre-answer screen in these particular procedural circumstances—where the amended IFP complaint seeks to add claims against a new defendant who has yet to be served or otherwise appear.  "[T]he purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).  And Section 1915(e)(2) authorizes a federal court to dismiss an IFP pleading that fails to comply with the requirements of that statute's sub-provisions "at any time." 28 U.S.C. § 1915(e)(2)(B).  Hence, the spirit of Section 1915(e)(2)(B) calls for this Court to first determine whether the proposed Amended Complaint warrants a response from MTC before service upon MTC is effectuated, and the express text of Section 1915(e)(2)(B) authorizes this Court to conduct a pre-answer screen at the Rule 15(a) stage of an action.

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under [Section 1915(e)(2)(B)] is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."[4] *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard

---

[4] The Court notes the standard employed under Section 1915(e)(2)(B) dovetails with the standard used to assess Rule 15(a)(2) motions. *Compare Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (instructing "leave to amend should be given freely" unless the proposed amendment is futile, and that the "proper test to be applied when determining [futility] is identical to the one used when considering the sufficiency of a pleading under Rule 12(b)(6)" (quoting *Miller v. Rykoff-Sexton, Inc..*, 845 F.2d 209, 214 (9th Cir. 1988)), *rev'd per curiam on other grounds*, 681 F.3d 1041 (2012) *with Wilhelm*, 680 F.3d at 1121, 1123 (instructing failure to state a claim under Section 1915A "incorporates" the Rule 12(b)(6) standard, but that an IFP litigant need only satisfy a "low threshold" to "proceed past the screening stage").

applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed-me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## III. ANALYSIS

Plaintiff seeks leave under Rule 15(a)(2) to add MTC as a Defendant and assert against it the same "state law claims" he asserts against the United States pursuant to the FTCA. (*See* Mot.; Am. Compl. at 6.) Although Plaintiff's Motion is unopposed, the United States' silence does not alleviate this Court's duty to screen the proposed Amended Complaint under Section 1915(e)(2)(B). *See supra* Sec. II.B.

The factual allegations in the proposed Amended Complaint practically mirror those in the initial Complaint. (*Compare* Compl. *with* Am. Compl.) In his newest pleading, Plaintiff alleges he has been civilly detained at IRDF by ICE for three years as he awaits removal proceedings. (Am. Compl. ¶ 1.) He alleges that IRDF is operated by MTC pursuant to a contract with ICE, and that IRDF staff principally consist of MTC employees who function as correctional officers "under the direct supervision of [ICE]." (*Id.*) Put differently, Plaintiff essentially alleges ICE has deputized MTC to run IRDF as a detention center for persons, such as Plaintiff, who were arrested by ICE and are awaiting removal.

Just as in his initial Complaint, the proposed Amended Complaint avers that in April 2020 Plaintiff was baselessly charged with inciting other detainees to riot. (Am. Compl. ¶¶ 13–15.) According to Plaintiff, those charges were predicated upon IRDF Officer Builteman's Incident Report, which purportedly "omitted significant details" and "only vaguely identified Plaintiff's role" in the purported incitement. (*Id.* ¶¶ 16–17.) Despite

being exonerated by the IDP (*see id.* ¶ 19), IRDF Facility Administrator Marrero overturned the IDP's decision and sentenced Plaintiff to 30 days of "disciplinary detention" (*id.* ¶ 20). Plaintiff spent both the period during which he was awaiting a hearing on the charges levied against him and his 30-day sanction imposed by Marrero in "solitary confinement," where he "was housed in a cell by himself where he spent twenty-three hours a day and where shackles and restrain[t]s [were] used on him every time he departed his cell and when escorted within the facility." (*Id.* ¶ 3.) Plaintiff sought to appeal Marrero's decision, but IRDF Assistant Facility Administrator Ruiz issued a declination. (*Id.* ¶ 21.) Plaintiff avers that Ruiz upheld Marrero's ruling by "add[ing] untruthful uncorroborated detail otherwise not present in the record that Plaintiff was seen by CCTV (cameras) telling other detainees not to retrieve food tray[s]." (*Id.*)

In its first pre-answer screen, this Court concluded Plaintiff's initial Complaint contained enough facts at this early stage to state a claim under the FTCA against the United States for false imprisonment. (Order, ECF No. 3); *see United States v. Muniz*, 374 U.S. 150, 159 (1963) (holding a person can sue under the Federal Torts Claim Act to recover damages from the United States for personal injuries sustained during confinement in federal prison); *Mayorov v. United States*, 84 F. Supp. 3d 678, 694 (N.D. Ill. 2015) (finding the FTCA waives sovereign immunity as to claims of false imprisonment). But despite repeatedly referencing MTC and illustrating the role MTC personnel played in the purportedly tortious conduct directed at Plaintiff, the initial Complaint did not name as Defendants MTC or any of its employees involved. Accordingly, the Court now must assess (1) whether Plaintiff states a claim against MTC sufficient to satisfy the low threshold applied under Section 1915(e)(2) and (2) whether this Court has jurisdiction over those claims.

Under California law, "[t]he tort of false imprisonment is the nonconsensual intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short." *Castro v. City of Hanford*, 546 F. Supp. 2d 822, 827 n.2 (E.D. Cal. Mar. 3, 2008). Furthermore, the doctrine of *respondeat superior* enables a plaintiff to hold

an employer liable for the torts committed by its employees within the scope of employment. *See generally* David Jacks Achtenberg, *Taking History Seriously: Municipal Liability Under 42 U.S.C. § 1983 and the Debate over Respondeat Superior*, 73 Fordham L. Rev. 2183, 2204 (2005); *cf. Scannell v. Cty. of Riverside*, 152 Cal.App. 3d 596, 695 (1984) (noting that a California public employer is responsible for the tort of false imprisonment based on the conduct of an employee acting within eh course and scope of his or her employment).

In a tort action, the "principles of *respondeat superior* of the state in which the alleged tort occurred" govern. *McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir. 2001). "California courts have interpreted the *respondeat superior* doctrine broadly to hold employers vicariously liable for a wide range of their employees' tortious activities." *Carroll v. United States*, No. 06CV0666 IEG (JMA), 2006 WL 8455441, at *4 (S.D. Cal. Oct. 30, 2006); *see also Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir. 1996) (observing California's variant of *respondeat superior* differs from the principles employed by other states in that it defines broadly the "scope of employment" element), *cert. denied* 520 U.S. 1142 (1997). California law prescribes two tests—either one of which is sufficient—to determine whether an employee's tortious conduct took place within the course or scope of his or her employment. *See Carroll*, 2006 WL 8455441, at *4 (citing *Martinez v. Hagopian*, 182 Cal. App.3d 1123, 1228 (1986)). That is, if the tortious act performed was either (1) "required by or 'incident to [the employee]'s duties'" or (2) "could be reasonably foreseen by the employer in any event," then the subject act was performed within the course or scope of employment and provides a basis for vicarious liability against an employer. *Martinez*, 182 Cal. App.3d at 1228; *Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 968 (1986).

Here, the Amended Complaint contains sufficient factual allegations to state a claim against MTC for false imprisonment under California law. Plaintiff alleges that while civilly detained by ICE in an MTC-operated facility he was placed in segregated disciplinary confinement for purportedly inciting a riot. He alleges this charge was

fabricated and lacked evidentiary support to justify a conviction through IRDF's internal disciplinary process, as reflected by the IDP's determination of Plaintiff's innocence in its Hearing Report.  However, IRDF Facility Administrator Marrero overturned that panel's decision in a thinly reasoned memorandum.  Plaintiff alleges he served a 30-day sentence in segregated confinement and suffered physical and emotional harm as a result.  Just as these allegations were sufficient to satisfy the low threshold required to state a claim for false imprisonment against the United States at the pre-answer screening stage (Order at 7–8), so too are they sufficient to state a claim that MTC officials falsely imprisoned Plaintiff.  Moreover, the doctrine of *respondeat superior* authorizes Plaintiff to hold MTC liable for the allegedly tortious conduct committed by IRDF staff members—namely, Builteman, Marrero, and Ruiz.  Indeed, the Amended Complaint contains sufficient allegations to plausibly infer the actions of Builteman, Marrero, and Ruiz that form the basis of Plaintiff's false imprisonment claim were performed incidentally to their duties as IRDF staff.

Having concluded Plaintiff states a claim under California law for false imprisonment robust enough to satisfy the low threshold that applies under Section 1915(e)(2)(B), the Court must next address whether it is appropriate for Plaintiff to join MTC to his FTCA action against the United States.  The Court finds *Agyeman v. Corrections Corporation of America*, 390 F.3d 1101, 1103–04 (9th Cir. 2004), to be particularly elucidating.  Like Plaintiff here, the plaintiff in that case—Emmanuel Agyeman—was civilly detained by the Immigration and Naturalization Service ("INS") while awaiting removal proceedings.  And like Plaintiff, the INS placed Agyeman in a facility operated by a private corporation, Corrections Corporation of America ("CCA").  While he was housed in that facility, Agyeman suffered from a cardiac event; CCA personnel rushed Agyeman to a medical facility.  During the transport, Agyeman fell in and out of consciousness.  Nevertheless, a CCA officer knocked Agyeman to the floor "for refusing to comply with an order and wasting their time."  Agyeman later commenced suit

against CCA and its employees in a *Bivens*-style action arising out of the purported physical assault. *Id.* at 1102–03.

Although the Ninth Circuit held *Bivens* does not authorize suit against a private corporation or its employees—even corporations that perform traditionally governmental functions—the Ninth Circuit listed the menu of procedural options available to Agyeman to seek redress from CCA. The Ninth Circuit explained that "Agyeman could have sued [CCA] directly in tort," either in state court or, if diversity jurisdiction or a federal statute applied, in federal district court. *Agyeman*, 390 F.3d at 1103 (citing *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 72–74 (2001) (declining to apply *Bivens* to private corporations and discussing alternative options for federal prisoners in private prisons)). Alternatively, the Ninth Circuit opined, Agyeman could have done *precisely* what Plaintiff does here. That is, Agyeman could have "brought a suit against the United States under the Federal Tort Claims Act," "join[ed] [CCA] as a defendant in the suit under the [FTCA]," and then "request[ed] the district court to exercise supplemental jurisdiction over [CCA]." *Id.* at 1104 (citing 28 U.S.C. § 1367).

Hence, *Agyeman* reflects that a state tort claim against a federal, privately-operated, civil detention center is appropriately entertained alongside a parallel claim against the United States under the FTCA *if* there exists supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the former. The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "A state law claim is part of the same case or controversy when it shares a 'common nucleus of operative fact' with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004).

Supplemental jurisdiction is mandatory unless prohibited by 28 U.S.C. § 1367(b), which is not applicable here, or unless one of the exceptions in § 1367(c) applies. Under § 13367(c), a district court may decline supplemental jurisdiction over a state claim if:

(1) [T]he claim raises a novel or complex issue of State law;

(2) [T]he claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) [T]he district court has dismissed all claims over which it has original jurisdiction; or

(4) [I]n exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). Underlying the § 1367(c) inquiry are considerations of judicial economy, convenience and fairness to litigants, and comity. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[I]f these are not present a federal court should hesitate to exercise jurisdiction over state claims[.]" *Id.*

This Court clearly has subject-matter jurisdiction over Plaintiff's state-law claims against MTC. The Court has original jurisdiction over Plaintiff's FTCA claim on the basis of federal jurisdiction. *See* 28 U.S.C. § 1346(b)(1). Furthermore, Plaintiff's claims against MTC and the United States arise from a common nucleus of operative facts—namely, Plaintiff's purportedly wrongful detention in a solitary confinement unit while civilly detained at IRDF. And as indicated by the Ninth Circuit in *Agyeman*, 390 F.3d at 1103–04, Plaintiff ordinarily would be expected to try his claims against MTC and the United States in the same judicial proceeding, *see Gibbs*, 383 U.S. at 725. Because none of the exceptions delineated at Section 1367(c) appear applicable here, the Court is mandated to exercise supplemental jurisdiction over Plaintiff's state tort claims against MTC. *See Executive Software N. Am. Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 24 F.3d 1545, 1555 (9th Cir. 1994) ("[Section 1367] confers power to entertain supplemental jurisdiction in mandatory terms.").

While the Court need not address every single perceptible argument that a defendant who has yet to be served or appear might later raise, one stands out that warrants discussion: the suggestion Plaintiff's failure to identify a specific state law tort claim amounts to a failure to state a claim upon which relief can be granted. Indeed, Plaintiff does not identify any particular cause of action, but instead asks this Court to exercise supplemental jurisdiction over his "state law claims." (Am. Compl. at 6.)

To find the Amended Complaint deficient on this ground would fail to give adequate respect to the special solicitude *pro se* litigants are afforded, particularly in civil rights actions. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n. 7 (9th Cir. 2010). A court is to "construe [*pro se*] pleadings liberally and to afford the [*pro se* plaintiff] the benefit of any doubt." *Id.* The purpose behind liberal construction of a *pro se* pleading is to protect "*pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). "Fulfilling this duty requires courts to look primarily to the *facts* underlying a *pro se* party's allegations, rather than to the specific legal theory or authority relied upon." *Nicholas v. Bratton*, No. 15-CV-9592 (JPO), 2019 WL 2223407, at *3 (S.D.N.Y. May 23, 2019) (emphasis in original). Hence, "[t]he failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988); *see also Yeiser Res. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1037 (S.D. Cal. 2017) ("[Plaintiff]'s failure to plead its claims under Delaware law did not deprive [defendant] of fair notice of potential claims that might arise from [plaintiff]'s factual allegations. It is those allegations which may or may not state a claim under Delaware law."). As this Court already found in its prior pre-answer screening Order, it is apparent that the facts alleged by Plaintiff give rise to a false imprisonment claim under California law. (Order at 7.) That he has alleged cogent, detailed facts to support the elements of such a claim is sufficient at this stage.

Therefore, the Court declines to dismiss the proposed Amended Complaint under Section 1915(e)(2)(B), and grants Plaintiff's Motion for leave to file his proposed Amended Complaint (ECF No. 7-1), which will replace, not supplement, the initial Complaint (ECF No. 1).

### IV.  CONCLUSION

Based on the foregoing, this Court:

1. **GRANTS** Plaintiff's Motion to Amend (ECF No. 7).

2. **DIRECTS** the Clerk of Court to file Plaintiff's proposed Amended Complaint (ECF No. 7-1), including the exhibits appended thereto (ECF No. 7-2), as Plaintiff's Amended Complaint.

3. **DIRECTS** the Clerk of Court to issue a summons as to Plaintiff's Amended Complaint upon Defendant Management & Training Corporation (referred to above as "MTC") and forward it to Plaintiff. The Clerk is further directed to include in that package two separate copies of this Order, Plaintiff's Amended Complaint, the summons, and a blank USM Form 285 for Defendant MTC. Plaintiff must complete the USM Form 285 as completely and accurately as possible, and return it to the U.S. Marshal according to the instructions the Clerk provided in the letter accompanying the "IFP Package" previously sent to Plaintiff **by no later than March 10, 2023**.

4. **ORDERS** the U.S. Marshal to serve a copy of the Amended Complaint and summons upon Defendant MTC as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

5. **ORDERS** Defendants reply to the Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a).

6. **ORDERS** Plaintiff, after service has been effected by the U.S. Marshall, to serve upon Defendant MTC, or, if appearance has been entered by counsel, upon Defendant's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Fed. R. Civ. P. 5(b). Plaintiff must

include with every original document he seeks to file with the Clerk of the Court a Certificate of Service stating the manner in which a true and correct copy of that document was served on Defendant or its counsel and the date of that service. *See* S.D. Cal. Civ. L.R. 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon Defendant, may be disregarded.

**IT IS SO ORDERED.**

**DATED: February 17, 2023**

Hon. Cynthia Bashant
United States District Judge